NO. 24-7666

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ARMAN GABAEE,

Defendant-Appellant.

---

**Appellant's motion to summarily remand for further proceedings and, alternatively, request for a certificate of appealability**

DEVIN BURSTEIN
Warren & Burstein
501 West Broadway, Suite 240
San Diego, CA 92101
(619) 234-4433

# TABLE OF CONTENTS

Table of Authorities ...................................................................... ii

Introduction ................................................................................. 1

Relevant Facts ............................................................................. 2

    A.  Background. ....................................................................... 2

    B.  The investigation. ............................................................ 4

    C.  The plea agreement. ......................................................... 8

    D.  The plea colloquy. ............................................................ 9

    E.  The 2255 ........................................................................ 10

Argument .................................................................................. 11

    A.  The Court should summarily remand for further proceedings or grant a COA on Gabaee's due process claim. ................................... 11

      1.  Summary remand for further proceedings is warranted because the district court failed to rule on Gabaee's due process claim. 11

      2.  Alternatively, the Court should grant a COA on Gabaee's due process claim. ................................................................. 18

    B.  The Court should summarily remand for further proceedings or grant a COA on Gabaee's actual innocence claim. ........................ 23

      1.  Summary remand for further proceedings is warranted because the district court failed to rule on Gabaee's actual innocence claim. ............................................................................... 23

      2.  Alternatively, the Court should grant a COA on Gabaee's actual innocence claim. ............................................................... 26

    C.  The Court should grant a COA on Gabaee's claim for ineffective assistance of counsel. .......................................................... 28

    D.  The Court should summarily remand for further proceedings or grant a COA based on the district court's denial of an evidentiary hearing. ............................................................................. 32

      1.  An evidentiary hearing is generally required. ..................... 32

      2.  Gabaee is entitled to an evidentiary hearing. ...................... 34

Conclusion ................................................................................. 35

i

# TABLE OF AUTHORITIES

## Federal Cases

*Ace Novelty Co. v. Gooding Amusement Co.*, 664 F.2d 761 (9th Cir. 1981) .................................................................................... 18

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .......................................... 19, 26

*Bousley v. United States*, 523 U.S. 614 (1998) ................................ 26, 28

*Brady v. United States*, 397 U.S. 742 (1970) ................................... 12, 20

*Clements v. Madden*, 112 F.4th 792 (9th Cir. 2024) ............................ 14

*Hill v. Lockhart*, 474 U.S. 52 (1985) ...................................................... 29

*Hughes v. Borg*, 898 F.2d 695 (9th Cir. 1990) ...................................... 29

*Jefferson v. Welborn*, 222 F.3d 286 (7th Cir. 2000) .............................. 17

*Johnson v. Ryan*, 55 F.4th 1167 (9th Cir. 2022) ........................ 15, 16, 21

*Lambert v. Blodgett*, 393 F.3d 943 (9th Cir. 2004) ............................... 30

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ............................................ 19

*Napue v. Illinois*, 360 U.S. 264 (1959) ............................................ 12, 20

*Reynoso v. Giurbino*, 462 F.3d 1099 (9th Cir. 2006) ............................ 30

*Schlup v. Delo*, 513 U.S. 298 (1995) ...................................................... 26

*Slack v. McDaniel*, 529 U.S. 473 (2000) .......................................... 19, 26

*Strickland v. Washington*, 466 U.S. 668 (1984) .................................... 29

*United States v. Avery*, 719 F.3d 1080 (9th Cir. 2013) .................... 24, 25

*United States v. Crooker*, 360 F. Supp. 3d 1095 (E.D. Wash. 2019) .... 24, 31, 32

*United States v. Garrett*, --- F.4th --, 2025 U.S. App. LEXIS 3769 (4th Cir. 2025) ...................................................................... 20, 21

*United States v. Howard*, 381 F.3d 873 (9th Cir. 2004) ......................... 33

*United States v. Jackson*, 21 F.4th 1205 (9th Cir. 2022) ................. 16, 17

*United States v. Leonti*, 326 F.3d 1111 (9th Cir. 2003) ..................... 1, 33

*United States v. Mancinas Flores*, 588 F.3d 677 (9th Cir. 2009)........... 26

*United States v. McKeever*, 824 F.3d 1113 (D.C. Cir. 2016).................. 16

*United States v. Paylor*, 88 F.4th 553 ................................... 20, 21, 24, 33

*United States v. Rodriguez*, 49 F.4th 1205 (9th Cir. 2022)........ 31, 33, 35

*United States v. Rodriguez-Rodriguez*, 2019 U.S. App. LEXIS 11964 (9th Cir. 2019)........................................................................ 35

*United States v. Valenzuela*, 2020 U.S. App. LEXIS 25124 (9th Cir. 2020)........................................................................ 35

*United States v. Villa-Guillen*, 102 F.4th 508 (1st Cir. 2024)............... 25

*United States v. Withers*, 638 F.3d 1055 (9th Cir. 2011)........... 15, 17, 18

*United States v. Wright*, 625 F.3d 583 (9th Cir. 2010) ......................... 16

*Wilson v. Belleque*, 554 F.3d 816 (9th Cir. 2009) ................................. 23

## Statutes

18 U.S.C. § 1343 ...................................................................... 8

18 U.S.C. § 1346 ...................................................................... 8

18 U.S.C. § 666(a)(2)........................................................... 1, 8, 22

28 U.S.C. § 2106 ...................................................................... 1

28 U.S.C. § 2253(c)(2) .......................................................... 19

28 U.S.C. § 2255 ................................................................passim

28 U.S.C. § 2255(b) ........................................................ 1, 15

## Other Authorities

Jed S. Rakoff, *Why Innocent People Plead Guilty*, N.Y. Rev. Books, November 20, 2014 .......................................................... 25

## Rules

Ninth Circuit Rule 3-6(a)(1) ........................................................ 1

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | C.A. No. 24-7666 |
| Plaintiff-Appellee, | D.C. Nos. 18-cr-00331-GW |
| v. | 23-cv-10627-GW |
| ARMAN GABAEE, | (Central Dist. Cal.) |
| Defendant-Appellant. | Motion to summarily remand for further proceedings and, alternatively, request for a certificate of appealability. |

## <u>Introduction</u>

Arman Gabaee filed a *pro se* petition under 28 U.S.C. § 2255 challenging his conviction for federal program bribery (18 U.S.C. § 666(a)(2)).[1] The district court denied the petition and a certificate of appealability. This was error.

The district court never addressed the principal claims in Gabaee's petition, applied the wrong legal standard throughout its analysis, and failed to grant an evidentiary hearing as required under section 2255(b). *See* 28 U.S.C. § 2255(b), 28 U.S.C. § 2106, *United States v. Leonti*, 326 F.3d 1111, 1121 (9th Cir. 2003), Ninth Circuit Rule 3-6(a)(1). For these reasons, summary remand for further proceedings is warranted.

---

[1] After the denial of his petition, Gabaee retained counsel.

In the alternative, the Court should grant a certificate of appealability (COA) on the following substantive claims:

1. Whether the prosecution secured Gabaee's guilty plea with false evidence in violation of his constitutional rights.

2. Whether Gabaee is actually innocent.

3. Whether Gabaee's prior counsel was constitutionally ineffective in advising him to plead guilty (a) without first investigating and challenging the government's false evidence, and (b) when he was actually innocent.

4. Whether the district court erred in failing to hold an evidentiary hearing before denying Gabaee's petition.

## Relevant Facts

### A.    Background.

Gabaee is a successful real estate developer in Los Angeles.  ECF No. 310 at 4.  Before this case, he had never been accused of a crime.  He was born in 1961, in Tehran, Iran.  ECF No. 268 at 18-20.  Because his family is Jewish, they suffered discrimination.  *Id.*  In 1975, to escape the oppression and in search of greater opportunity, he moved to the United States.  *Id.* at 21.

In the 1980s, Gabaee and his brother started a real estate development business, the Charles Company.  *Id.* at 22.  Beginning with a single parking garage, the company grew to include approximately 115

2

properties. *Id.* at 22-25. The County of Los Angeles was among the company's many tenants. "From 1994 to 2017, the County leased approximately nine properties resulting in over 350,000 square feet of office space." ECF No. 310 at 8.[2] This case involves one of the County leased spaces in Hawthorne, California (the Hawthorne property).

In 2001, the County entered a lease to rent office space for the Department of Public Social Services (DPSS) in the Hawthorne property. ECF No. 310 at 8-9. In 2011, the County renewed the DPSS lease. *Id.* The new lease was for 5 years with two 5-year renewal options. *Id.*

As the initial lease period was ending in 2016, Gabaee sought a decision from the County as to whether it would renew or move out of the building. *Id.* at 12-13. He discussed the matter with, among others, his longtime friend Thomas Shepos, who worked for the County's real estate division in its leasing section. *Id.*

Gabaee's and Shepos's friendship began years before, in 1999. ECF No. 268 at 13. They met on a project for the County. ECF No. 310 at 9.

---

[2] ECF No. refers to the docket entry in the district court record. The page cites are to the automatically generated numbers on the top of the page. Unless noted, within quotations, internal punctuation marks and citations are omitted, and emphasis is added.

Shepos's wife was Jewish, and he had recently converted to Judaism. Gabaee and Shepos bonded over their shared faith. *Id.* As their friendship grew, they often met for breakfast and attended each other's family events, such as bar mitzvahs. *Id.* at 9-10.

In June 2011, Shepos came to Gabaee for help. *Id.* at 10. His wife was leaving him because he had gambled away $500,000. *Id.* at 10-11. He was broke and unable to cover his monthly expenses. *Id.* Given their longtime friendship, Gabaee agreed to loan him $1,000 monthly. *Id.* As time went on, Shepos continued to plead poverty and asked Gabaee if he would consider buying a property in Northern California that Shepos could manage when he retired. *Id.* at 14.

Unbeknownst to Gabaee, however, Shepos had an even bigger problem than his divorce and financial woes. *Id.* at 11-12. Shepos's responsibilities with the County included hiring construction workers to upgrade its leased spaces. *Id.* at 9-12. For years, he secretly accepted payments from contractors to send them County construction projects. *Id.* at 11-12.

## B.   The investigation.

Unrelated to Gabaee, the FBI began investigating Shepos's

4

kickback scheme in 2017. *Id.* Seeking leniency, he agreed to cooperate. *Id.* at 12. The FBI wanted to use Shepos to get to Gabaee and then to pressure Gabaee to participate in a sting targeting County Supervisor Mark Ridley Thomas. *Id.*[3]

Initially, Shepos told the FBI that Gabaee never offered him bribes or kickbacks and that he and Gabaee were simply close friends. *Id.* He maintained there was never any impropriety. *Id.* But with pressure from his criminal charges mounting, Shepos changed his tune. *Id.* at 12-13. Reversing course, he now claimed the monthly loans from Gabaee were bribes in exchange for his help securing leases and renewals from the County. ECF No. 270 at 11. Shepos also told the FBI that in exchange for his help with county business, Gabaee offered to buy him a house in Northern California. *Id.*

Shepos agreed to record their meetings, and the government also obtained a Title III order to tap Gabaee's phone. ECF No. 310 at 15-16. These recordings confirmed that Gabaee repeatedly spoke to his good friend Shepos about the renewal of the lease for the Hawthorne property.

---

[3] Supervisor Thomas was eventually convicted of bribery and fraud charges, which had nothing to do with Gabaee.

5

Naturally, considering Shepos's knowledge, Gabaee sought his friend's guidance and help expeditiously navigating the process. *Id.* at 13. But Shepos told Gabaee there was nothing he could do to help. *Id.*

The recordings, moreover, were most notable for what they did not reveal. Gabaee never said the monthly subsistence payments were contingent on Shepos taking any action with the County. There was nothing suggesting, "I'll pay you $1,000 per month if you do X or Y."

The recordings did, however, confirm an extremely close and genuine friendship. For instance, during one of the surreptitiously recorded meetings between Shepos and Gabaee, they had the following conversation:

AG:  What do you need, Tom?

TS:  Nothing.

AG:  Hmm?

TS:  Nothing.

AG:  [UI] get you then?

TS:  It's still January.

AG:  Here, come on. You want more?

TS:  No, I'm good.

AG:  I have…

TS:  Maybe later this month.

AG:  What's that?

TS:  Next time we get together.

AG:  Call me.

TS:  **Alright.  I love you.**

AG:  **Love you too.**

TS:  Take care buddy.

ECF No. 271 at 45-46.  This recorded conversation reflects two friends helping each other, rather than the typical pay-for-play.  *Id.* at 47.

Nevertheless, on April 15, 2017, FBI agents visited Gabaee's home. ECF No. 310 at 14.  Seeking to secure his cooperation against Supervisor Thomas, they played Gabaee a recording of his conversation with Shepos, during which they discussed the Northern California property purchase. *Id.*  The FBI wanted him to wear a wire and offer Supervisor Thomas a bribe.  *Id.*  After consulting with counsel, Gabaee informed the FBI he had done nothing illegal and would not participate in its operation.  *Id.*

As a result, the government charged him with three counts of honest services fraud in violation of 18 U.S.C. §§ 1343 and 1346 and two

7

counts of federal program bribery in violation of 18 U.S.C. § 666(a)(2). ECF No. 14. Gabaee pleaded not guilty and prepared for trial. Shortly before it began, the parties attempted to resolve the case. Although Gabaee was reluctant to enter any deal, under pressure from his attorneys, he agreed to consider the government's offer. ECF No. 310 at 28-29.

## C. The plea agreement.

The prosecution then proposed a plea agreement in which it would dismiss counts one through three and five in exchange for a guilty plea to count four charging federal program bribery (18 U.S.C. § 666(a)(2)). ECF No. 240. As particularly relevant here, the government-drafted factual basis included the following:

> Based on CW1's [Shepos's] level of seniority, CW1 had significant autonomy to contractually bind the County. *Id.* at 7.

> Beginning in or about 2010 or 2011, and continuing until on or about April 11, 2017, defendant paid CW1 bribes and kickbacks of approximately $1,000 about every month, in exchange for, among other things: (a) CW1 providing non-public County information to defendant; (b) CW1 resolving issues between defendant and County departments or agencies on terms favorable to defendant; and (c) CW1 helping to secure County leases for defendant and negotiating terms in those leases that were beneficial to defendant. *Id.* at 7-8.

8

[¶] To secure that DPSS Lease, beginning in or about, but no later than, December 2016 and continuing until on or about April 25, 2017, defendant attempted to bribe, and did bribe, CW1 with (a) the monthly cash bribe payments and (b) the purchase of a residential property in Northern California for CW1's use.  In exchange for these bribes, defendant sought to have CW1 perform various official acts related to the DPSS Lease . . . .

To uphold his end of the quid pro quo arrangement . . . . defendant offered to buy CW1 a property on Annadel Heights Drive in Santa Rosa. . . . Defendant intended to purchase the Annadel Heights Drive property for CW1; however, he rescinded his [] purchase offer hours after he made it, because FBI agents had approached and informed him that the FBI was aware of his bribes to CW1.

*Id.* at 8-10.

Gabaee received and reviewed the plea agreement on or about April 26, 2022.  The trial was scheduled for May 10, 2022.  With little time to consider the offer and pressure from his attorneys, Gabaee signed the agreement.  *Id.* at 18.

## D.    The plea colloquy.

During the plea colloquy, however, he expressed his concern with the accuracy of the government's assertions.  ECF No. 246 at 34-35; ECF No. 310 at 25.  After the government recited the factual basis, the court

asked, "is everything that the AUSA has just said about your intent, about your conduct, and about your actions, true and correct?" ECF No. 246 at 34. Gabaee hesitated and spoke privately with his attorney. *Id.*

He told his lawyer that the facts about the property on Annadel Heights Drive were "false and inaccurate." ECF No. 310 at 25. "Counsel advised [Gabaee] to accept the government's rendition of the factual basis even though it was false." *Id.* Gabaee followed counsel's advice, and the plea went forward. ECF No. 246 at 36. On December 15, 2022, the district court sentenced Gabaee to 48 months in custody, two years of supervised release, and imposed a $1,149,000 fine. ECF No. 284.

## E. The 2255.

On December 13, 2023, Gabaee timely filed a *pro se* petition under 28 U.S.C. § 2255. ECF No. 310. In the "Grounds For Relief" section, Gabaee primarily argued "that prosecutorial misconduct deprived him of his right to due process." *Id.* at 28. He alleged that the government secured his guilty plea "by knowingly presenting false evidence through deliberate deception in the material facts set forth in the indictment, plea agreement, and change of plea phases." *Id.* In addition to arguing that his plea was involuntary based on the government's use of false evidence,

10

Gabaee also claimed he was actually innocent and that "defense counsel's representation was below the Constitutional standard for effective representation." *Id.* at 29.

Based on the government's use of false evidence to secure his guilty plea, his actual innocence, and his attorneys' failure to investigate the case, the *pro se* petition argued that Gabaee's conviction should be reversed. *Id.*

The district court denied the petition without ordering an evidentiary hearing and declined a COA. ECF No. 349. Its order rejected the ineffective assistance of counsel claim on the merits. *Id.* at 7-8. But curiously, it completely overlooked Gabaee's principal due process based involuntary plea claim. Nor did the court rule on his actual innocence claim. This motion follows.

## Argument

### A. The Court should summarily remand for further proceedings or grant a COA on Gabaee's due process claim.

#### 1. Summary remand for further proceedings is warranted because the district court failed to rule on Gabaee's due process claim.

The principal claim in Gabaee's section 2255 petition was that the government violated his due process rights by using false evidence and

11

allegations to coerce his guilty plea. ECF No. 310 at 27-28. This rendered his plea involuntary because it was not done with sufficient awareness of the relevant circumstances and likely consequences. *Id.* at 27 (citing *Brady v. United States*, 397 U.S. 742, 755 (1970)).

Citing *Napue*,[4] Gabaee argued that the government falsely alleged that Shepos had significant authority within the County real estate division when, in truth, he was "a low-level County employee." ECF No. 310 at 29-30. "The only control he had was the ability to hire various subcontractors for tenant improvements on County buildings (i.e. plumbers, electricians, telecommunications, etc.)." *Id.* at 30-31.

Further, although the government represented that Shepos "had significant autonomy to contractually bind the County," this was false. ECF No. 240 at 7. Gabaee provided evidence from Shepos's direct supervisor, who stated, "Shepos had no authority to bind the County and no real influence over the leases." ECF No. 310 at 31. Instead, any lease had to go through multiple levels of County approvals, including the Board of Supervisors. "Shepos had no direct role, he had no influence over the County's decisions. The facts reveal Shepos had no influence

---

[4] *Napue v. Illinois*, 360 U.S. 264, 296 (1959).

and no authority over County employees. Shepos could not loosen or tighten the County's municipal-funding purse strings." *Id.* at 34.[5]

Moreover, as related to the Hawthorne Property lease, Gabaee alleged that Shepos, while cooperating, "made up a new fake lease, giving it to Petitioner. This was done on Shepos's own accord or the coaxing of the government." *Id.* at 38. As such, the government misrepresented the evidence when it claimed that Shepos delivered a genuine County lease to Gabaee in exchange for the alleged bribes. ECF No. 240 at 8-10. Because Shepos was an informant, the government must have known there was no such lease.

The petition further explained that the government's assertions about the Northern California property purchase were also false. Gabaee did not intend to buy the property *for* Shepos; he was contemplating the purchase for himself in his own name. ECF No. 310 at 41-45. And Gabaee did not cancel the purchase because of the FBI; he canceled the day *before* the FBI unexpectedly appeared at his home. *Id.* In other words, the timing was fortuitous not causal. Gabaee had no idea the FBI

---

[5] The petition included a chart showing the various levels of approval needed to contractually bind the County to a lease. There were approximately seven levels *above* Shepos. *Id.* at 48.

would show up the next day.  415-964-9887

Based on all this information, the petition argued, "[t]he false evidence submitted was a violation of due process and a fundamental error which prejudiced Petitioner." *Id.* at 4; *also* at 29 ("The knowing use of false evidence and deliberate deception, and the failure to correct false evidence, violates due process.").

The district court, however, failed to address this argument.  At no point in its order did the court even acknowledge Gabaee's central claim.  Instead, as evidenced by its written order, the district court mistakenly believed "Petitioner [] based his motion on claims of ineffective assistance of counsel." ECF No. 349 at 2.  As a result of that basic misunderstanding (or failure to dedicate sufficient attention to the *pro se* filing), nearly all the court's analysis focused on that issue without discussing the due process argument. *Id.* at 3-5.  This was error requiring summary remand for further proceedings.

On habeas review, it is well-established that a petitioner can challenge the validity of his plea on due process grounds. *See Clements v. Madden*, 112 F.4th 792, 799 (9th Cir. 2024).  The district court, therefore, was required to resolve the claim on the merits or explain why

14

it was somehow barred. *See United States v. Withers*, 638 F.3d 1055, 1060 (9th Cir. 2011) ("the district court erred by failing to discuss the merits of [petitioner's] § 2255 habeas motion"). Indeed, section 2255(b) expressly requires that, upon the filing of a non-frivolous 2255 petition, "the court shall . . . determine the issues and make findings of fact and conclusions of law with respect thereto."

To be clear, although the *pro se* petition did raise a claim of ineffective assistance – discussed below – even a cursory review shows that was *not* the thrust of Gabaee's argument. His argument was primarily dedicated to the government's use of false evidence, which is a due process claim, not one based on the Sixth Amendment. Nor can the district court's failure to tackle the principal claim be blamed on Gabaee's somewhat inartful drafting. Precisely because *pro se* litigants struggle in their motions, courts "have an obligation where the petitioner is *pro se* . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022).

And in any event, Gabaee's petition was far clearer than most *pro se* petitions. It cited the leading Supreme Court precedent, contained

15

straightforward factual allegations, repeatedly argued that under those facts, the government's use of false evidence violated Gabaee's due process rights, and included significant supporting documentation. Nothing further was required to alert the district court to the actual issues. *See id.*

Accordingly, its failure to address the merits of Gabaee's claim calls for remand. *See United States v. Jackson*, 21 F.4th 1205, 1216 (9th Cir. 2022) ("We remand for the district court to consider the merits of Jackson's . . . claim in the first instance."); *United States v. McKeever*, 824 F.3d 1113, 1117 (D.C. Cir. 2016) ("In circumstances such as these, when we cannot discern the District Court's disposition of the [] issue, justice will be best served if we remand the case to afford the trial judge an opportunity to address the issue in the first instance."). Indeed, the Court cannot review on appeal a ruling that has never been made. *See United States v. Wright*, 625 F.3d 583, 602 (9th Cir. 2010) ("The absence of any factual findings by the district court considerably frustrates our appellate review.").

This Court's decision in *Jackson*, 21 F.4th at 1216, is illustrative. After filing a 2255 petition, the petitioner sent a letter to the district

court, adding another substantive claim. The court, however, never ruled on that claim. *See id.* This Court remanded because the "district court must . . . consider the merits of this claim." *Id.* Similarly, in *Withers*, 638 F.3d at 1066, this Court held, "[b]ecause [the petitioner's] claim was not palpably incredible or patently frivolous . . . the district court erred in [denying the] claim without . . . issuing findings of fact and conclusions of law. The Court further concluded, "[r]emand for the district court to develop the underlying facts is [] appropriate." *Id.*

The Seventh Circuit's decision in *Jefferson v. Welborn*, 222 F.3d 286 (7th Cir. 2000), is also helpful. There too, the district court denied a petition without reaching the merits. *See id.* at 287. On appeal, the court concluded that because the petitioner's claims were not utterly baseless, it was "for the district court to make the first assessment of their underlying merit." *Id.* at 289. Thus, the Seventh Circuit "remand[ed] the case to the district court for further proceedings." *Id.*

The same remedy is appropriate here because numerous factual and legal issues raised by Gabaee remain unresolved by the district court. As just a few examples:

- What was the scope of Shepos's authority to bind the County?

17

- Did Shepos create a false lease for the Hawthorne property at the prosecution's request?

- Did Gabaee cancel the Annadel Heights purchase before the FBI came to see him?

- If the government's assertions were false, were they knowingly so?

- Was any false evidence material to the guilty plea?

Without a remand to resolve these and other questions by the district court in the first instance, meaningful appellate review will be far more complicated and unnecessarily so. *See Ace Novelty Co. v. Gooding Amusement Co.*, 664 F.2d 761, 763 (9th Cir. 1981) ("The limited record here, coupled with the absence of findings of fact, complicates our determination . . . . We therefore remand to the district court"). Accordingly, the Court should send this case back for proper resolution of Gabaee's due process claim.

> 2. <u>Alternatively, the Court should grant a COA on Gabaee's due process claim</u>.

Alternatively, a COA should issue so that Gabaee can pursue his due process claim on appeal. *See Withers*, 638 F.3d at 1060 ("grant[ing] a certificate of appealability on whether the district court erred by failing to discuss the merits of [the] § 2255 motion or by failing to make findings of fact and conclusions of law.").

18

Under 28 U.S.C. § 2253(c)(2), the Court must issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." To do so, however, "the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also Slack v. McDaniel*, 529 U.S. 473, 479 (2000).

The Supreme Court has further clarified that a habeas petitioner need not "prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). Thus, "a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Id.* at 337.

19

Accepting Gabaee's allegations as true – which the Court must[6] – the petition sets forth at least a debatable due process claim based on the government's use of false information about Shepos, the Hawthorne lease, and the potential purchase of the Annadel Heights Drive property.

As a matter of law, using such false evidence to influence a guilty plea can render the plea involuntary. *See Brady*, 397 U.S. at 755 (a plea is involuntary where the plea agreement "was induced by . . . misrepresentation"); *Napue*, 360 U.S. at 269 ("it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall[.]"). Even when there is a signed plea agreement and Rule 11 colloquy, "the failure to disclose information may still render a plea involuntary" when "the nondisclosure . . . made it impossible for [the defendant] to enter a knowing and intelligent plea." *United States v. Garrett*, --- F.4th --, 2025 U.S. App. LEXIS 3769, *23-24 (4th Cir. 2025).[7] In other words, "when the prosecution's actions amount

---

[6] *United States v. Paylor*, 88 F.4th 553, 565 (4th Cir. 2023) ("we are obliged to accept a petitioner's well-pleaded allegations as true, and [] to draw all reasonable inferences therefrom in the petitioner's favor.").

[7] In this context, reliance on out-of-circuit precedent is particularly appropriate because of the reasonable jurist standard.

to deceit or lack of candor that materially affects the defendant's understanding of the case against him," this can "render a guilty plea involuntary[.]" *Id.* at *24.

Thus, "a defendant need not make a claim of actual innocence in arguing that his plea was not knowingly and voluntarily made." *Paylor*, 88 F.4th at 561. Instead, "[i]f a defendant can show that there was egregiously impermissible conduct involved in his prosecution" – such as the knowing use of false information – he can obtain relief by demonstrating "that this misconduct influenced his decision to plead guilty." *Id.* In other words, a defendant need only "show that a reasonable defendant standing in his shoes likely would have altered his decision to plead guilty, had he known about [the] misconduct." *Id.*

Although the record on these issues is not as developed as it could be – mainly because the district court erroneously denied an evidentiary hearing (more on this below) – Gabaee's allegations and evidence make at least a prima facie case that he was coerced to plead guilty by the government's use of false information. This is especially true when his *pro se* filing is construed "liberally" and he is "afford[ed] . . . the benefit of any doubt." *Johnson*, 55 F.4th at 1179.

To review, Gabaee's petition said, "[t]he facts show the government engaged in misconduct to deprive Petitioner of his right to due process and fair proceedings." ECF No. 310 at 3. "[T]he government presented false facts [about Shepos's position and the alleged bribes] and these facts do not support the evidence to convict Defendant of bribery charged in Count Four of the indictment, in violation of 18 U.S.C. § 666(a)(2)." *Id.*

The petition goes on: "This misconduct allowed the prosecution to secure Petitioner's conviction by knowingly presenting false evidence through a deliberate decision in the material facts set forth in the indictment, plea agreement, and change of plea phases." *Id.* at 28; *also* at 30 ("The government alleged their theory in the indictment and the plea agreement which were knowingly false, inaccurate, and intentionally misleading as the basis to establish the material fact to which counsel advised Petitioner to plead guilty.").

From a layperson, this was undoubtedly sufficient to make a viable due process claim that the plea was unknowing and that, but for the falsity, there would have been no guilty plea. "A petitioner satisfies [the COA] standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed

22

further." *Miller-El*, 537 U.S. 327. Here, given that Gabaee has not yet been granted an evidentiary hearing and the district court did not rule on this claim, he should be permitted to proceed further. A COA should issue. *See Wilson v. Belleque*, 554 F.3d 816, 826 (9th Cir. 2009) (demonstrating entitlement to a COA is a "non-demanding standard.").

**B. The Court should summarily remand for further proceedings or grant a COA on Gabaee's actual innocence claim.**

1. <u>Summary remand for further proceedings is warranted because the district court failed to rule on Gabaee's actual innocence claim.</u>

Turning next to Gabaee's actual innocence claim, here also, summary remand is required.

Throughout his *pro se* pleadings, Gabaee maintained he was "innocent of the alleged offenses in the indictment." ECF No. 322 at 3. He alleged, "there was no bribery payments made between petitioner and Shepos." ECF No. 310 at 34. Further, "[a]t no time did Petitioner knowingly participate in bribery or kickbacks. At the time he believed he was helping subsidize his friend with living expenses." *Id.* at 44.

The district court correctly understood that "Petitioner now claims actual innocence[.]" ECF No. 349 at 4. But once again, the court did not rule on the merits because it believed, "[t]he time has come-and-gone for

Petitioner to attempt to prove his innocence through evidence he believes or believed favors his story, and not that of the Government." *Id.* at 5. In the court's view, the "ship has sailed" on Gabaee's "attempt to demonstrate that he had a strong defense case and that the Government could not have successfully prosecuted him." *Id.* at 6.

The district court was wrong as a matter of law. A claim of actual innocence is properly brought in a petition under 28 U.S.C. § 2255, even when the petitioner previously pleaded guilty to the crime. *See United States v. Paylor*, 88 F.4th 553, 555 (4th Cir. 2023) ("even when a defendant swears to a plea in open court, that plea is not categorically immunized from collateral attack."); *United States v. Crooker*, 360 F. Supp. 3d 1095, 1106 (E.D. Wash. 2019) ("section 2255 relief is available for a plea colloquy that results in the conviction of one who is actually innocent.").

As this Court held in *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013), "[a]ctual innocence is an equitable remedy that permits a petitioner to obtain collateral review[.]" And in asserting such a claim in a section 2255 petition after a guilty plea, "[t]he language contained in the Information and plea agreement . . . is not dispositive." *Id.* at 1084.

24

This makes sense because "federal law acknowledges that an innocent defendant might nevertheless plead guilty[,] [thus] [a]n initial plea is not dispositive of [a defendant's] guilt." *United States v. Villa-Guillen*, 102 F.4th 508, 517 (1st Cir. 2024). Indeed, "[t]here are a number of reasons why a defendant might choose to plead guilty. . . . [A] defendant's decision to plead guilty may have any number of other motivations aside from consciousness of guilt, including shock, avoidance of financial and emotional cost, and hope for a lesser sentence." *Id.* Moreover, "innocent defendants might engage in plea discussions because they lack information about the [the prosecution's] evidence, making it difficult for the innocent to forecast the likely trial outcome." *Id.*; *see also* Jed S. Rakoff, *Why Innocent People Plead Guilty*, N.Y. Rev. Books, November 20, 2014.

This is precisely what Gabaee claimed. Accordingly, under this Court's precedent, the ship had not sailed, and the time had not come and gone for Gabaee to show this innocence. *Avery*, 719 F.3d at 1083. His claim was properly brought in the section 2255 petition. The district court, therefore, committed legal error in failing to consider Gabaee's assertions of innocence, which is yet another basis for summary remand.

25

*See United States v. Mancinas Flores*, 588 F.3d 677, 684 (9th Cir. 2009) (this Court "necessarily review[s] the district court's decision-making process, not simply whether the decision resulted in a permissible outcome.").

    2.    <u>Alternatively, the Court should grant a COA on Gabaee's actual innocence claim.</u>

Gabaee's innocence claim also provides a strong basis for granting a COA. To establish actual innocence, a defendant must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence[.]" *Schlup v. Delo*, 513 U.S. 298, 328 (1995). In "deciding whether a petitioner has made the requisite showing of innocence . . . the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence." *Id.*

In the COA context, however, the question is not whether Gabaee has already made this showing but simply whether his petition stated an actual innocence claim that is "adequate to deserve encouragement to proceed further." *Barefoot*, 463 U.S. 893 n.4; *Slack*, 529 U.S. at 479.

26

Plainly, it did.

Gabaee supported his assertions of actual innocence with significant documentary evidence. He demonstrated a longstanding, close friendship with Shepos, explained the legitimate basis for his consistent monthly payments, and justified his interest in buying a property that Shepos could manage in retirement.

He also proffered evidence from higher-level County employees that Shepos had no authority to bind the County in any commercial lease. ECF No. 310 at 67. Moreover, County employees charged with reviewing leases "never noticed anything unusual about [leases] being processed by Shepos." *Id.* at 71.

For instance, Chuck West, who "reviewed all of the leasing contracts the Country entered into," stated that "[h]e never saw anything inappropriate with respect to the Gabays or them being awarded contracts." *Id.* at 73.[8] Shepos's supervisor, Carlos Marquez, further confirmed that he "never saw anything inappropriate with respect to Shepos and the Gabays. No specific advantages were provided by Shepos to the Gabays and he never saw any inside information given to the

---

[8] Gabaee's name is spelled differently in these reports.

27

Gabays on what upcoming requirements were expected. The Gabays also received **below market** value for their deals with the County." *Id.* at 76. "Marquez recalled the Gabays received **less than market value for the lease on the Hawthorne property**." *Id.*

This is strong evidence in support of an actual innocence claim. No one pays bribes to receive below-market value. And no one pays bribes to someone with no power to impact the sought-after result. The evidence in the petition, therefore, tends to show that Gabaee had no motive to bribe Shepos, but would have numerous legitimate reasons to help his longtime friend financially. Consequently, it is at least debatable that "in light of all the evidence [presented in the petition], it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. A COA should issue.

## C. The Court should grant a COA on Gabaee's claim for ineffective assistance of counsel.

The district court denied Gabaee's ineffective assistance of counsel claim on the merits. In doing so, however, it misapprehended the facts and misapplied the law. Thus, on this claim also, the Court should issue a COA.

Counsel is constitutionally defective when two elements are met.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, counsel's performance was deficient. *See id.* Second, the deficient performance prejudiced the defendant. *See id.* This test applies to challenges to guilty pleas based on ineffective assistance of counsel in procuring the plea agreement and advising the defendant to plead guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In denying Gabaee's ineffective assistance claim, the district court found that he had "not adequately explained how any of the factual/evidentiary issues he now attempts to raise are tied at all to the purported deficient performance of his counsel." ECF No. 349 at 6. "Nor has he explained how any possible ineffective assistance could have possibly prejudiced him, considering the extraordinarily lenient sentence he received after entering into the plea agreement with the Government." *Id.*

The court's finding on deficient performance was mistaken, and its finding on prejudice was wrong as a matter of law.

"Deficient performance is performance which is objectively unreasonable under prevailing professional norms." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990). "In the context of a guilty plea, the

ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004).

Here, Gabaee's deficiency claim was tied directly to his argument on the government's use of false evidence and his innocence. Although written in *pro se* language, his explanation was easy to follow: Counsel was deficient in failing to investigate and uncover the government's use of false evidence and allegations. Had counsel acted diligently and exposed the falsity, they would have realized that Gabaee was innocent and that the government likely could not prove its case. Counsel, therefore, would have properly advised him, and there would never have been a guilty plea.

This is an entirely viable – and at least debatable – claim of deficient performance. Indeed, "[a]lthough trial counsel is typically afforded leeway in making tactical decisions [], counsel cannot be said to have made a tactical decision without first procuring the information necessary to make such a decision." *Reynoso v. Giurbino*, 462 F.3d 1099, 1113 (9th Cir. 2006). Thus, "counsel's failure to [investigate] Defendant's

30

case or advise him that he likely did not commit the crime charged against him cannot be seen as a reasonably objective tactical or strategical decision; it was a failure to perform the duties expected of a defense attorney." *Crooker*, 360 F. Supp. 3d at 1110.

Because this is what Gabaee alleged here, the district court erred in finding he had "not adequately explained how any of the factual/evidentiary issues he now attempts to raise are tied at all to the purported deficient performance of his counsel." ECF No. 349 at 6.

The district court also erred in its prejudice analysis. As quoted above, it believed the supposedly "extraordinarily lenient sentence" meant that Gabaee could not demonstrate prejudice from any deficient performance. *Id.* This was wrong as a matter of law: "where [the petitioner] pleaded guilty and no trial occurred . . . to prove prejudice . . . [the petitioner] must demonstrate that absent his attorney's incompetence, he would rationally have rejected the plea bargain and would either have gone to trial or received a better plea bargain instead." *United States v. Rodriguez*, 49 F.4th 1205, 1213 (9th Cir. 2022) (cleaned up). Because that was the proper inquiry, the district court's reliance on the supposedly lenient sentence was entirely beside the point.

Moreover, Gabaee's prejudice argument was straightforward and inherent in his due process and innocence claims. If counsel had adequately investigated the government's allegations and learned of their falsity, the rational choice would have been trial. "[I]t is reasonable to conclude that advising a defendant that he may not have committed the crime of which he is charged would cause the defendant *not* to plead guilty." *Crooker*, 360 F. Supp. 3d at 1110.

Thus, because Gabaee has made debatably meritorious claims as to both deficient performance and prejudice, he is entitled to a COA on his ineffective assistance of counsel claim.

## D. The Court should summarily remand for further proceedings or grant a COA based on the district court's denial of an evidentiary hearing.

Finally, a COA or summary remand is also warranted based on the court's failure to grant an evidentiary hearing.

### 1. An evidentiary hearing is generally required.

"When a defendant files a motion under 28 U.S.C. § 2255, the district court '*shall*' grant an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' A hearing *must* be granted unless the movant's

32

allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Rodriguez*, 49 F.4th at 1213.

As this Court has explained, "[e]videntiary hearings are particularly appropriate when claims raise facts which occurred out of the courtroom and off the record. The counterfactual inquiry of 'what a defendant would have done' is also particularly appropriate for an evidentiary hearing." *Id.*

Moreover, "[t]he standard for granting an evidentiary hearing [under § 2255] entails assuming the truth of [the petitioner's] factual allegations[.]" *Leonti*, 326 F.3d at 1121; *see also Paylor*, 88 F.4th at 565 ("we are obliged to accept a petitioner's well-pleaded allegations as true, and we are to draw all reasonable inferences therefrom in the petitioner's favor."). A petitioner, therefore, "demonstrate[s] that the district court erred in not granting an evidentiary hearing[] [by showing he] (1) . . . allege[d] specific facts [in the motion] which, if true, would entitle him to relief; and [that] (2) the petition, files and record of the case [did not] conclusively show that he [wa]s entitled to no relief." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004) (citing 28 U.S.C. § 2255).

2.    <u>Gabaee is entitled to an evidentiary hearing.</u>

Gabaee alleged facts that, if true, established: (a) the government used false evidence to secure his guilty plea, (b) he was innocent, and (c) that his counsel was constitutionally ineffective.

These claims involved genuine disputes of material fact.   For instance, the government repeatedly asserted that Shepos had "significant autonomy to contractually bind the County."  ECF No. 1 at 7, No. 240 at 7.  Gabaee alleged this was false and submitted evidence to bolster his claim.  The scope of Shepos's authority is a material fact because the theory of prosecution was that Gabaee bribed Shepos for preferential treatment in real estate contracts.  For this reason, an evidentiary hearing was needed to resolve the genuine factual dispute. And the same reasoning applies to myriad other factual assertions in Gabaee's petition.

 "When the court is faced with a fact-intensive analysis . . . and where the defendant presents some evidence not palpably false . . . then it cannot be said that the record is conclusive against the defendant, nor can it be said that the defendant's claim is so palpably incredible or patently frivolous as to warrant summary dismissal."  *Rodriguez*, 49

34

F.4th at 1216. In that circumstance, "it is illogical—and therefore an abuse of discretion—to deny an evidentiary hearing." *Id.*

So too in this case. Accordingly, the Court should summarily remand for further proceedings and an evidentiary hearing. *See United States v. Valenzuela*, 2020 U.S. App. LEXIS 25124, *1 (9th Cir. 2020) (remanding for an evidentiary hearing following the denial of a 2255 petition without such a hearing). Because Gabaee is now represented by counsel, he should also be permitted to supplement his petition.

Alternatively, to the extent the Court determines that rather than a summary remand, a COA will issue on the substantive claims, it should also issue a COA on whether the district court erred in failing to grant Gabaee's request for an evidentiary hearing. *See United States v. Rodriguez-Rodriguez*, 2019 U.S. App. LEXIS 11964, *1 (9th Cir. 2019) (order granting a certificate of appealability on "whether an evidentiary hearing is necessary"). That said, the most efficient course would be first to hold an evidentiary hearing, which might also eliminate the need for appeal entirely.

## Conclusion

The Court should summarily remand for further proceedings,

including amended briefing and an evidentiary hearing. Alternatively, the Court should grant a COA on Gabaee's claims.

March 14, 2025

Respectfully submitted,
/s/ *Devin Burstein*
Warren & Burstein